Elizabeth A. Best, Esq.
BEST LAW OFFICES, P.C.
425 Third Avenue North
P.O. Box 2114
Great Falls, MT  59403-2114
Telephone:(406) 452-2933
Facsimile: (406) 205-7970
bestlawoffices@gmail.com

*Attorney for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| DALE OSBORNE, ) <br> as Personal Representative of ) <br> the Estate of Sarah Osborne, ) <br> KELLY OSBORNE and DALE ) <br> OSBORNE, individually, ) <br> ) <br>　　　Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> BILLINGS CLINIC, ) <br> ) <br>　　　Defendant/Third-Party ) <br>　　　Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br>　　　Third-Party Defendants. ) | **Cause No. CV-14-126-BLG-SPW** <br> **Hon. Susan P. Watters** <br><br><br><br><br> **PLAINTIFFS' BRIEF IN** <br> **SUPPORT OF MOTION TO** <br> **COMPEL** |

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................... 2

BACKGROUND ......................................................................2

    Discovery Requests and Responses .............................................3

        First Discovery Requests ..................................................3

        Second Discovery Requests ................................................9

ARGUMENT ...........................................................................9

    I.     Billings Clinic Made Baseless Claims of Privilege and Waived its Privilege Claim by Failing to Provide a Privilege Log ................ 10

        Privilege Log.................................................................. 10

        Policies .........................................................................11

        Specious Objections........................................................13

    II.    Billings Clinic's Claim that the Information Sought is Equally Available to Plaintiffs is Spurious, Frivolous, and Obstructive........ 14

        Plaintiffs Do Not Have Access to the Documents Requests...............15

        Billings Clinic has Possession, Custody, and Control of the Documents Requested........................................................18

    III.   Billings Clinic Improperly Interposed Improper Boilerplate, Shotgun Objections........................................................ 18

        "Confidentiality" of Policies.............................................19

        Marketing and Accreditation Documents are Patently Relevant........20

    IV.   Billings Clinic Refused to Answer Request for Admission No. 3..... 20

V.     Billings Clinic Improperly Refused to Produce Healthcare
Information, Misstating the Requests and Misusing
MCA §37-2-201 and §50-16-201 *et. seq*. .......................................... 21

          Healthcare Information Belongs to Plaintiffs .....................................21

          Billings Clinic Deliberately Misinterpreted Requests
to Include "Data" ..................................................................................22

VI.    Billings Clinic Ignored Plaintiffs' Second Discovery Requests .........25

VII.   The Court should Issue Judgment on Liability and Award
Plaintiffs all Fees and Costs incurred in bringing this
Motion to Compel ..................................................................................25

CONCLUSION ................................................................. 26

CERTIFICATE OF COMPLIANCE .................................................... 27

EXHIBIT INDEX ................................................................................28

# TABLE OF AUTHORITIES

**<u>Cases</u>**                                                                                   **<u>Page</u>**

*Bowne of N.Y.U. City, Inc. v. AmBase Corp.*,
    150 F.R.D. 465, 470 (S.D.N.Y. 1993) ........................................................11

*Burlington Northern v. U.S. Dist. Court*,
    408 F.3d 1142, 1149 (9th Cir. 2005)......................................................13, 19

*Covington v. Sailormen Inc.*,
    274 F.R.D. 692, 693 (N.D. Fla. 2011) .................................................. 18-19

*Eureka Financial Corp. v. Hartford Acc. And Indem. Co.*,
    136 F.R.D. 179, 183 n. 7 (E.D.Cal. 1991) ..................................................11

*Great Falls Tribune v. Montana Public Service Com'n*,
    2003 MT 359, ¶ 39, 319 Mont. 38, 82 P.3d 876 ...................................12, 23

*Hickman v. Taylor*,
    329 U.S. 495, 507 (1947) ...............................................................................9

*Huether v. District Court*,
    2000 MT 158, 300 Mont. 212, 4 P.3d 1193 .............................. 21, 21-22, 24

*Lewis v. UNUM Corp. Severance Plan*,
    203 F.R.D. 615, 622 (D. Kan. 2001)............................................................11

*Moe v. Sys. Transp., Inc.*,
    270 F.R.D. 613, 618, 623-24 (D. Mont. 2010) ...........................................17

*Patterson v. State*,
    46 P.3d 642, 645 (Mont. 2002) ....................................................................10

*Peat, Marwick, Mitchell & Co. West*,
    748 F.2d 540, 542 (10th Cir. 1984)..............................................................10

*Phillips ex rel Estates of Byrd v. General Motors Corp.*,
    307 F.3d 1206 (9th Cir. 2002)......................................................................12

**Cases (cont'd)**                                                          **Page**

*Pina v. Espinoza,*
     130 N.M. 661, 29 P.3d 1062 (2001) ............................................................11

*Richardson v. State,* ¶¶35-58, 52,
     2006 MT 43, 331 Mont. 231, 130 P.3d 634 ..........................................10, 18

*San Jose Mercury News, Inc. v. United States Dist. Ct.,*
     187 F.3d 1096, 1103 (9th Cir.1999),.............................................................12

*United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO,*
     870 F.2d 1450, 1452 (9th Cir. 1989).............................................................18

*United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 682,
     78 S.Ct. 983, 986-87, 2 L.Ed.2d. 1077...........................................................2

*Valley Eng'rs v. Electric Eng'g Co.,*
     158 F.3d 1051, 1058 (9th Cir. 1998).......................................................25-26

*Weaver v. Law Firm of Graybill, Ostrem, Warner & Crotty,*
     246 Mont. 175, 180, 803 P.2d 1089, 1092 (1990) .......................................18


**Montana Code Annotated**

Section 37-2-201, MCA ....................................................................................21, 24

Section 50-16-201, MCA ............................................................................21, 22, 24

Section 50-16-201(1)(a), MCA ...............................................................................24

Section 50-16-541, MCA ........................................................................................21

Section 50-16-502(4), MCA ....................................................................................21

Section 50-16-504(6), MCA ....................................................................................21

Section 50-16-522, MCA ........................................................................................21

## Federal Rules of Civil Procedure

Rule 26(b)(1), F.R.Civ.P. ................................................................. 9, 10

Rule 26(g), F.R.Civ.P. ........................................................................26

Rule 26(g)(1)(B), F.R.Civ.P. ..............................................................25

Rule 26(g)(3), F.R.Civ.P. ...................................................................25

Rule 33, F.R.Civ.P. .............................................................................10

Rule 33(a)(2), F.R.Civ.P. ...................................................................10

Rule 33(b)(4), F.R.Civ.P. ...................................................................19

Rule 34, F.R.Civ.P. .............................................................................10

Rule 34(a), F.R.Civ.P. ........................................................................18

Rule 36, F.R.Civ.P. .............................................................................10

Rule 36(a)(4) and (5), F.R.Civ.P. ......................................................21

Rule 36(a)(6), F.R.Civ.P. ...................................................................21

Rule 37(a)(2)(B), F.R.Civ.P. ..............................................................25

Rule 37(a)(4), F.R.Civ.P.............................................................25, 26

Modern instruments of discovery, together with pre-trial procedures, "make a trial less a game of blindman's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.* (1958), 356 U.S. 677, 682, 78 S.Ct. 983, 986-87, 2 L.Ed.2d. 1077 (citation omitted).

COME NOW THE PLAINTIFFS, through counsel, and hereby file and serve their Brief in Support of Their Motion to Compel Discovery.

## INTRODUCTION

Billings Clinic improperly:

- Made blanket and unsupported objections to discovery;

- Failed to file a privilege log;

- Improperly applied the so called "peer review" privilege statutes;

- Improperly held back clearly discoverable documents on claims that Plaintiff could as easily obtain the documents themselves;

- Refused to produce clearly discoverable documents; and

- Improperly refused to requests for admissions to avoid responding.

## BACKGROUND

On July 1, 2012, Sarah Osborne, 27, presented to the Billings Clinic Emergency Room with severe pain associated with a urinary tract infection. Sarah was a Type 1 diabetic, diagnosed at 15, and was well known to the Billings Clinic, because she had required frequent surgery and hospitalizations relating to this condition. In at least two of those visits, she had respiratory arrest related to

prescription medications. The Billings Clinic has records from another medication-related arrest at the Bozeman Deaconess Hospital.

Sarah was admitted on the morning of July 1, 2012. Even though the Clinic knew her well, it assigned her to residents from Riverstone Health. Throughout that day, Billings Clinic administered multiple pain medications. It administered oxygen during the night. At 0830 the next morning, July 2, 2012, her oxygen was removed, a nurse helped her into bed, shut off the light and closed the door. At 0920, a teenage volunteer found Sarah not breathing.

No nurse or doctor saw Sarah for at least 20 minutes before she arrested, possibly as long as 35-40 minutes. Hospital personnel did not begin chest compressions after finding her for at least five minutes. Although her pulse returned, she suffered a severe hypoxic brain injury. She remained alive for another ten days, and passed away on July 12, 2012. After she died, the hospital risk manager sent her urine to the Mayo Clinic. No autopsy was conducted.

## Discovery Requests and Responses

### First Discovery Requests

On February 4, 2014, Plaintiffs served their First Discovery Requests. Plaintiffs asked for:

1) Information about the relationship between Billings Clinic and Riverstone Health and Billings Clinic organizational structure.
2) Policies relating to Sarah's care, treatment, and the supervisory relationship of Riverstone residents.

3)     Identity of persons who participated in Sarah's care, responded to her respiratory arrest, and made decisions before her arrest.

4)     Facts and depictions of the physical location of the arrest.

5)     Facts and information relating to decisions made after Sarah's arrest and after her death.

6)     Requests for admission about undisputable facts, such as authenticity and possession of records reflecting notice that Sarah arrested previously in response to medications.

7)     Documents relating to committee meetings about Sarah's care which are not protected by Montana's "peer review" statutes.

Billings Clinic objected to virtually all requests, and made repeated statements that Montana Medical Legal Panel ("MMLP") records contained the answers, without identifying where. It ignored the substance of specific requests. Plaintiffs also wanted responsive documents in the Clinic's custody beyond MMLP records.

Billings Clinic asserted boilerplate "burden," "overbreadth" and "relevance" objections. It refused to respond to many requests, citing Montana's peer review statutes, even though the requests exclude protected documents. It asserted "privilege" but provided no privilege log. It twisted and changed requests for admissions and then denied them. *See, Tab A, Responses; and Tab B, Amended and Supplemental Responses.* [1]

Despite the failure to file a privilege log or legal basis for privilege, the State Court granted Billings Clinic Motion for a Protective Order as to its hospital policies, without discussion. [Docket No. 12-5]. Plaintiffs respectfully request

---

[1] Two charts summarizing the Billings Clinic's discovery responses are attached hereto as Tab C.

that this Court evaluate this issue as part of this Motion.[2]  As shown below, no basis exists for privilege.

The State District Court held a hearing on the instant Motion to Compel on July 25, 2014, and at the end of the hearing asked counsel for Plaintiffs to prepare a proposed Order and submit it, which she did on July 28, 2014.  The State Court never signed the order.

Billings Clinic objected asserting that many documents are "equally available" to Plaintiffs. For instance:

- **RFP 2**- organizational documents from 2007 to present (only by-laws <u>in effect when Sarah died</u> were finally produced, which was not the scope of the request).
- **RFP 3**- agreements/understandings with Riverstone.

Billings Clinic asserted the above objections plus confidentiality, privacy, proprietary information to the following, all limited to 2010 to present:

- **RFP 5**- policies-rapid response team-coded patients
- **RFP 6**- policies- responding to coded patients
- **RFP 16**- policies, guidance re in-hospital respiratory or cardiac arrest
- **RFP 25**- policies re vital signs for admitted patients
- **RFP 26**- policies re patient controlled analgesia
- **RFP 27**- policies re monitoring patients known to have prior respiratory arrest

---

[2] The Protective Order states: "If any party objects to any document classified as "confidential" per this protective order re confidentiality, that party shall notify Billings Clinic counsel of the objection.  Billings Clinic's counsel then shall move the Court for a Protective Order for the specific objected-to document(s). During the period of time Billings Clinic is seeking a protective order for the specific objected-to document(s) and until such time as the Court rules on any protective motion, said document(s) shall remain subject to the terms and conditions of this protective order re confidentiality."  Pursuant to the protective order, Plaintiffs filed a Notice of Objection on August 11, 2014. The Billings Clinic never responded or otherwise followed the terms of the Order.

- **RFP 28**- policies re supervision of care provided by Riverstone residents
- **RFP 29**- policies re quick response to respiratory/cardiac arrest
- **RFP 30**- policies re equipment and staff required for quick response
- **RFP 31**- policies re pharmacy authority to override physician orders
- **RFP 32**- policies re staffing requirements on the floor to which Sarah was admitted
- **RFP 38**- policies re role and supervision of residents
- **RFP 39**- policies re patients admitted who do not have a Billings Clinic primary provider
- **RFP 40**- policies re admitting patients whose primary provider is not available
- **RFP 41**- policies re patient controlled analgesia
- **RFP 42**- policies re Billings Clinic "Code Blue" process, team, equipment
- **RFP 43**- policies re "crash cart"
- **RFP 46**- policies re privileges for residents and required ACLS certification.  It refused to produce more than what it produced in response to RFP No. 3: Medicare Graduate Medical Education Affiliation Master Agreement.
- **RFP 47**-policies regarding PCA physician orders

It asserted burden, overbreadth, Montana peer review statutes, work product

privilege, admissibility, and "equally available" to:

- **RFP 8**-documents relating to toxicology screen of Sarah's urine
- **RFP 9**-documents relating to Sarah, but not yet produced
- **RFP 10**-documents relating to removal of oxygen cannula from Sarah Osborne on July 2, 2012.
- **RFP 12**-communications among its officers, employees, agents about Sarah on July 1 and 2, 2012
- **RFP 13**-documents relating to response to Sarah's respiratory arrest.
- **RFP 15**-documents relating to residents involved in Sarah's care-July 2012
- **RFP 20**-health care information used to make decisions about Sarah's treatment and care
- **RFP 21**-records <u>not</u> related to "proceedings" of professional utilization, peer review, medical ethics review, and professional standards review

committees relating to Sarah's care.

- **RFP 22**-documents relating to Sarah's care from July 1, 2010 to present.
- **RFP 23**-staff meeting minutes for staff with responsibility for responding to patients who "code" or arrest.
- **RFP 33**- documents relating to the submission of urine to the Mayo Clinic <u>after</u> Sarah Osborne died.
- **RFP 34**- orders, emails, correspondence, representations to the family, memoranda, and notes, relating to the decision not to perform an autopsy after Sarah died.
- **RFP 36**- releases signed by Sarah, her agents or representatives, emails, letters, memos, orders, notes, and any other documents in Billings Clinic or Mayo possession relating to toxicology testing requested by Billings Clinic - June 30, 2012 to present.
- **RFP 37**- documents generated by Mayo re their policies for testing urine for toxins-January 1, 2012 to present
- **Int. 7**- name and current employer of each <u>non-physician</u> who had contact with Sarah.

It asserted overbreadth, attorney-client privilege, work product, admissibility

to:

- **RFP 18-** training provided for physicians, residents, nursing staff, others re standards for quality care, including meeting minutes, applicable January 1, 2010, to present.

It asserted confidentiality, admissibility, and "equally available" to:

- **RFP 35**- communications, including emails and notes, between and among Riverstone residents involved in Sarah's care.

It asserted "equally available" to:

- **RFP 7**- orders for a toxicology screen of Sarah's urine, blood, or other tissue from July 1, 2012 to present.
- **RFP 14**- records reflecting care of Sarah by the resident(s) from 12:01 a.m. on July 2, 2012, through her respiratory arrest.

It referenced generally the 7,000 page MMLP records and asserted "equally

available" regarding Sarah's care in July 2012:

> **Int. 5**-identity and current employer of persons involved or present during the response to Sarah's respiratory arrest.
> **Int. 6**-identity and current employer of physicians who treated Sarah.
> **Int. 8**-person(s) who participated in performing chest compressions on Sarah.
> **Int. 9**- person(s) who administered Narcan to Sarah.
> **Int. 11**- person(s) who placed the endotracheal tube in Sarah.
> **Int. 12**- resident(s) and their current employer(s) who participated in Sarah's care.
> **Int. 14**- state how much Dilaudid were administered to Sarah.
> **Int. 15**- state how much Fentanyl were administered to Sarah.
> **Int. 16**- state how much morphine were administered to Sarah.
> **Int. 17**- identify any other medications administered to Sarah.
> **Int. 18**- state whether Sarah had vomited, urinated or defecated when found in respiratory arrest.

It refused to admit:

- **RFA 3-** that it <u>maintained</u> the records attached (MMLP *7276-7298*) in the regular course of business.

It asserted undue burden and asserted "equally available" to:

- **RFP 11-** photographs or other depictions of any kind of Sarah Osborne or her room for the period July 1, 2012 to present.

It asserted undue burden and admissibility to:

- **Int. 19-** identity of all professional organizations and accrediting agencies to which it belongs, or from which it seeks approval, certification or affiliation.
- **RFP 17-** marketing information- Jan. 1, 2010 to present
- **RFP 24-** applications, reports or other documents submitted to any agency for certification by Billings Clinic January 1, 2010, to present.

Plaintiffs' counsel certifies that she attempted to confer with counsel for

Billings Clinic about its responses in March 2014. *See, Tab D, letter.* Counsel for Billings Clinic requested several delays and Plaintiffs' counsel agreed. *See, Tab E, emails.* Billings Clinic's counsel did not respond. Instead, they served Plaintiffs with discovery. *See, Tab F, discovery requests.* Days before the hearing on Plaintiffs' Motion in State Court, Billings Clinic produced a few pages of documents, but did not substantially respond to the requests at issue. *Tab G, Second Supplemental Responses.* Counsel for Plaintiff again attempted to confer before filing in this Court. *Tab H, email.* Billings Clinic did not respond.

## Second Discovery Requests

On August 18, 2014, Plaintiffs sent their Second Discovery Requests to Billings Clinic. *Tab I, discovery requests.* It simply ignored the requests. Counsel for Plaintiff attempted to confer on October 20, 2014, and Billings Clinic did not respond. *Tab H.*

## <u>ARGUMENT</u>

"Discovery [assures] the mutual knowledge of all relevant facts gathered by both parties which are essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). Rule 26 (b)(1) Fed. R.Civ.P. provides:

> (b) (1) Scope in General. … Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense ….. *The information sought need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence…*

(emphasis added). Even arguably inadmissible evidence should be produced. *Richardson v. State*, ¶¶ 35-58, 2006 MT 43, 331 Mont. 231, 130 P.3d 634. Discovery is liberal and broad. *Patterson v. State*, 46 P.3d 642, 645 (Mont. 2002)(citation omitted). "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." See, Rule 26(b)(1) F.R.Civ.P.

Rule 33 prohibits objecting because an interrogatory "asks for an opinion or contention that relates to fact or the application of law to fact." Rule 33(a)(2). Rule 34 permits requests for production of all potentially relevant documents in the "possession, custody, or control of the party upon whom the request is served..." Rule 36 controls requests for admission and the effect of failing to make good faith responses to requests for admissions.

## I.  The Billings Clinic Made Baseless Claims of Privilege and Waived its Privilege Claim by Failing to Provide a Privilege Log.

### Privilege Log

"The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document." *Peat, Marwick, Mitchell & Co. West*, 748 F.2d 540, 542 (10th Cir. 1984). The party asserting privilege has the burden of showing an objectively reasonable basis <u>on the date</u> the discovery <u>responses are due</u>:

> We *expressly disapprove of the practice of permitting the proponent of a privilege to rely on an initial conclusory assertion of a privilege* and to *gradually unveil the basis* for her claims of privilege . . . This practice delays resolution of privilege issues and is unfair to the opponent of the privilege, … (emphasis added.)

*Pina v. Espinoza*, 130 N.M. 661, 29 P.3d 1062 (2001).

A conclusory claim of privilege is insufficient as a matter of law. See, *Eureka Financial Corp. v. Hartford Acc. And Indem. Co.*, 136 F.R.D. 179, 183 n. 7 (E.D.Cal. 1991).

Billings Clinic made conclusory claims of privilege and failed to file a privilege log specifically addressing each document and legal basis for its assertion of privilege. Thus, it waived privilege. *See Pina, supra; Bowne of N.Y.U. City, Inc. v. AmBase Corp.*, 150 F.R.D. 465, 470 (S.D.N.Y. 1993) ("This burden …cannot be discharged by mere conclusory or *ipse dixit* assertions" *Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 622 (D. Kan. 2001)). *See also, Eureka Financial Corp. v. Hartford Acc. and Indem. Co.,* 136 F.R.D. 179, 182-83 (E.D.Cal 1991) (emphasis added).

## Policies

Billings Clinic told the State Court in briefing opposing this Motion that Plaintiffs "knew very well the basis" for refusing to produce policies claiming they are "confidential*."* [Docket No. 8-2 at 139]. Plaintiffs responded: "'confidentiality' is not a privilege, and these documents are not trade secrets." *See, Tab J, email.*

To justify refusing to produce policies, Billings Clinic relied on *Great Falls Tribune v. Montana Public Service Com'n*, 2003 MT 359, ¶ 39, 319 Mont. 38, 82 P.3d 876 which actually only stated: "…a non-human corporate entity may enjoy confidentiality of its property interests *under Montana statutory law, such as the Uniform Trade Secrets Act*, Title 30, Chapter 14, Part 4…" The policies are not trade secrets.

Billings Clinic must show "good cause" for protection because documents are "presumptively public":

> Generally, the public can gain access to litigation documents and information produced during discovery unless the party opposing disclosure shows "good cause" why a protective order is necessary. In *San Jose Mercury News, Inc. v. United States Dist. Ct.,* 187 F.3d 1096, 1103 (9th Cir.1999), the court said, "[i]t is well-established that the fruits of pre-trial discovery are, in the absence of a court order to the contrary, presumptively public.

*Phillips ex rel Estates of Byrd v. General Motors Corp.*, 307 F.3d 1206 (9th Cir. 2002). Billings Clinic did not identify the policies it has, or the basis for withholding them, nor did it prove specific prejudice or harm. Although it finally produced some policies under the State Court's protective order, it did not produce all responsive policies. *Tab K, Third Supplemental Responses.* Plaintiffs have repeatedly asked counsel for Billings Clinic for a table of contents for its policies, but it never provided it. *Tab L, emails and letters.* In addition, Billings Clinic never produced responsive policies for the time period requested, instead selecting

a narrow time frame it deemed relevant.

In *Burlington Northern v. U.S. Dist. Court,* 408 F.3d 1142, 1149 (9th Cir. 2005) the Ninth Circuit ruled that:

> …a district court should make a case-by-case determination, *taking into account the following factors: the degree to which the objection or assertion of privilege enables the litigant seeking discovery and the court to evaluate whether each of the withheld documents is privileged* (where providing particulars typically contained in a privilege log is presumptively sufficient and *boilerplate objections are presumptively insufficient*); the *timeliness of the objection and accompanying information about the withheld documents* (where service within 30 days, as a default guideline, is sufficient); the magnitude of the document production; and other particular circumstances of the litigation that make responding to discovery unusually easy ….These factors should be applied in the context of a *holistic reasonableness analysis, intended to forestall needless waste of time and resources, as well as tactical manipulation of the rules and the discovery process. ….* (emphasis added).

Here, there is no legal basis for a claim of privilege and no privilege log was produced.

## Specious Objections

Billings Clinic asserted it held back documents because "…attorney memos, correspondence to clients, and other clearly protected material" would be discoverable in response to Plaintiffs' discovery requests. [Docket. No. 8-2 at 136-155]. Plaintiffs never asked for privileged documents. Plaintiffs asked for:

- Policies and procedures;

- Facts relating to identity of persons who participated in Sarah's care,

in the response to her respiratory arrest, and decisions made in her care and monitoring before her arrest;

- Facts and depictions relating to the physical appearance of the location of the arrest.  This assists in the understanding of the circumstances of the care and treatment, and response to the arrest, of Sarah Osborne;

- Facts and information relating to decisions made after Sarah's arrest and after her death;

- Communications between and among employees and agents, Riverstone Health, and the Mayo Clinic, such as emails, memos, and other documents which are responsive to the specific discovery requests;

- Requests for admission about undisputable facts, such as authenticity and possession of certain records which reflect notice that Sarah had arrested previously in response to medications;

- Information narrowly defined so as not to be covered by Montana's peer review statutes.

## II.   Billings Clinic's Claim that the Information Sought is Equally Available to Plaintiffs is Spurious, Frivolous, and Obstructive.

Plaintiffs' discovery requests attempt to explore Billings Clinic's defenses, seek probative facts, and narrow the issues.  In response to many requests, Billings Clinic responded that Plaintiffs have "equal access to the information sought." [Docket No. 8-2 at 140].  This is false.

///

## <u>Plaintiffs Do Not Have Access to the Documents Requested</u>

Billings Clinic claims Plaintiffs have equal access to[3]:

- Organizational documents (RFP No. 2); [4]
- Agreements/understandings between Riverstone and Billings Clinic relating to the Family Practice residency (RFP No. 3);
- Persons with knowledge of allegations or defenses, and summary of knowledge (Int. No. 2);[5]
- Orders for toxicology screens for Sarah's bodily fluids (RFP No. 7);
- Documents relating to a toxicology screen of Sarah's urine, blood, or other tissue, from July 1, 2012 to present, including memoranda, notes, correspondence and emails (RFP No. 8);[6]
- Documents relating to Sarah not yet produced (RFP No. 9);[7]
- Orders or other documents relating to the decision to remove Sarah's oxygen cannula (RFP No. 10);
- Photographs or other depictions of Sarah (RFP No. 11);[8]
- Identity <u>and current employer</u> of persons involved in the response or who was present during the response to Sarah's arrest (Int. No. 5);[9]
- Identity <u>and current employer</u> of physicians who treated Sarah (Int. No. 6);
- Identification by name and <u>current employer</u> of each non-physician who treated Sarah (Int. No. 7);
- Logs, charts, emails, and documents by/between Billings Clinic's agents,

---

[3] Billings Clinic supplemented and produced a few selected documents, but not all, and did not produce a privilege log.

[4] In many responses Billings Clinic also stated a refusal to produce documents for the time period requested, and asserted unfounded objections based on Montana's Healthcare Information statutes.

[5] Billings Clinic claims Plaintiffs would have equal knowledge, even though some persons are clearly not found in the records, for example, the 15 year old volunteer who found Sarah down in her room in respiratory arrest. Other persons may similarly be absent from the records.

[6] Plaintiffs do not believe they have all documents relating to the decision to screen Sarah's bodily tissues or fluids. If they have been produced, they seek Billings Clinic's confirmation of this fact, and identification of said documents.

[7] No emails, memos, or other correspondence have been produced, and Plaintiffs obviously have no access to such documents.

[8] Billings Clinic videotaped Sarah. This video has not been produced. Plaintiffs also want to know if any other depictions, drawings or photos were created, and seek production, if so.

[9] All persons are not disclosed in the medical records. For instance, the teenager who found Sarah down was shown nowhere in the records. Moreover, the current employer of all persons is nowhere in the records.

officers, employees relating to Sarah from July 1-12, 2012 (RFP No. 12);[10]

- Documents relating to the response to Sarah's respiratory arrest (RFP No. 13);[11]
- Person(s) who participated in chest compressions on Sarah (Int. No. 8);[12]
- Person(s) who administered Narcan to Sarah after her arrest (Int. No. 9);[13]
- Identification of person(s) who placed the endotracheal tube in Sarah (Int. No. 11);
- Resident(s) who participated in Sarah's care (Int. No. 12);
- Records reflecting care of Sarah by residents (RFP No. 14);
- Documents relating to any resident who participated in Sarah's care including information about qualifications (RFP No. 15);[14]
- Description of objects in Sarah's room at the time of her arrest (Int. No. 13);[15]
- Amount of Dilaudid administered to Sarah (Int. No. 14);[16]
- Amount of Fentanyl administered to Sarah (Int. No. 15);
- Amount of morphine administered to Sarah (Int. No. 16);
- Other medications administered to Sarah (Int. No. 17);
- Whether Sarah had vomited, urinated, or defecated when found in respiratory arrest (Int. No. 18);[17]
- Documents relating to incident or occurrence reports, meaning written business records, that may or may not be required of staff relating to the response to Sarah's injury and death (RFP No. 19);[18]
- Documents relating to health care information for Sarah used in whole or in part to make decisions about Sarah's treatment (RFP No. 20);
- Documents relating to Sarah's care from January 1, 2010 which do not relate to "proceedings" of professional utilization, peer review, medical ethics

---

[10] Plaintiffs seek documents, such as emails, logs, charts, correspondence, and memos which are obviously not in the records.

[11] Plaintiffs reasonably want to know which records of the 7,000 pages produced relate to the specific factual issue, and also wants to know if any other records exist.

[12] With respect to this and other records, it is not clear from the records which persons participated in the health care procedure identified.

[13] This information is not clear in the records.

[14] The requested information is not in the records.

[15] Billings Clinic did not answer this question, choosing instead to identify objects usually found in patients' rooms.

[16] Plaintiffs seek to expressly narrow this question, which should not be difficult for Billings Clinic.

[17] This information is not in the records.

[18] This request is carefully narrow to avoid asking for privileged peer review "data."

review, professional review committees (RFP No. 21);[19]

- Documents relating to Sarah's care from July 1, 2010 to present <u>including documents otherwise discoverable</u> or admissible from an original source even if presented before a committee (including notes, minutes, memoranda, correspondence, emails (RFP No. 22);
- Documents, including orders, emails, correspondence, HIPAA compliant releases from family, memoranda, and notes relating to submission of urine to the Mayo for toxicology screening (RFP No. 33);[20]
- Documents, including orders, emails, correspondence, HIPAA compliant releases from family, memoranda, and notes relating to the decision not to perform an autopsy on Sarah (RFP No. 34);
- All correspondence, including emails, between and among Riverstone agents involved in Sarah's care and Billings Clinic (RFP No. 35);
- Documents, including releases, emails, letters, memos, orders, notes in Billings Clinic's or Mayo's possession relating to toxicology testing on Sarah's tissue or fluids (RFP No. 36)

It is false that this information is "equally available to Plaintiffs." Plaintiffs' requests were carefully tailored in time and to the facts. Billings Clinic insists that documents, <u>only in its possession,</u> are equally available to Plaintiffs. Billings Clinic, as the party resisting discovery, has the burden of showing its right to withhold information. *Moe v. Sys. Transp., Inc.,* 270 F.R.D. 613, 618, 623-24 (D. Mont. 2010). Billings Clinic not only failed to meet its burden with citations to applicable law, it made claims, which are patently not true in order to resist.

Where a discovery request "can reasonably be interpreted, in the context of the claims and defenses at issue, as seeking discoverable information," the defendant must not impute "some meaning to the request which would render it

---

[19] This and other requests were specifically crafted to ask for records which are not privileged.
[20] This and other requests seeks emails, notes, memoranda, and correspondence which are not in the records.

vague, ambiguous, or objectionable in some other respect." Otherwise, discovery as a search for the truth would be meaningless. *Richardson v. State*, 2006 MT 43, ¶ 52, 331 Mont. 231, 130 P. 3d 634.

## Billings Clinic has Possession, Custody, and Control of the Documents Requested

Billings Clinic was required to produce documents in its "possession, custody or control." Fed.R.Civ.P. Rule 34 (a). It has `possession, custody or control' if it has "actual possession, custody, or control, or has the legal right to obtain the documents on demand." *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). Before the State Court, it cited *Weaver v. Law Firm of Graybill, Ostrem, Warner & Crotty*, 246 Mont. 175, 180, 803 P.2d 1089, 1092 (1990) to justify refusing to produce documents. [Docket No. 8-2 at 141]. In *Weaver*, the plaintiff sought production of documents not in defendant's possession, custody or control. The documents requested here, in contrast, are in the sole possession, custody and control of the Billings Clinic. Plaintiffs have no independent ability to obtain them other than through Billings Clinic.

## III.     Billings Clinic Improperly Interposed Improper Boilerplate, Shotgun Objections.

Objections must be stated specifically. "[B]oilerplate, shotgun-style objections" are improper. *(See Covington v. Sailormen Inc.,* 274 F.R.D. 692, 693

(N.D. Fla. 2011); Rule 33(b)(4) "the grounds for objecting to an interrogatory must be stated with specificity" and "any ground not stated in a timely objection is waived, unless the court, for good cause, excuses the failure;" *Burlington Northern, supra.*

Billings Clinic admitted in State Court briefing opposing Plaintiffs' motion that it "inadvertently stated bare objections to requests seeking policies and procedures" but that its supplementation a few days later excuses these responses. (emphasis added). [Docket No. 8-2 at 139]. Even when it supplemented, however, Billings Clinic did not produce all of the policies requested or file a privilege log.

### "Confidentiality" of Policies

Billings Clinic claimed in State Court briefing that it authored its own policies through some sort of "confidential" process. This is not true. Billings Clinic admits that the Joint Commission requires policies in order to be accredited. [Docket No. 8-2 at 138-139]. Billings Clinic posts some policies online, which reflect that the source of its policies is outside agencies and authors. [Docket No. 8-2 at 121: References]. Moreover, the policies it finally produced under a protective order also reflect that outside authors and agencies are the source. Docket No. 12-5.[21]

///

---

[21] Because these were produced under a Protective order, these policies cannot be attached to this brief. Plaintiff requests leave to file these policies for the Court's review, *in camera.*

**Marketing and Accreditation Documents Are Patently Relevant**

In addition to refusing to produce other relevant information, Billings Clinic held back marketing information and information about its accreditations and certifications, deeming them not relevant. The standard for discovery is not whether or not a party believes that requested information is relevant. [Docket No. 8-2 at 151-152].

Marketing information is disseminated by Billings Clinic via the internet and other media to persuade prospective patients or their families of its ability to provide safe patient care and meet relevant standards of care. This is discoverable and reasonably likely to lead to the discovery of probative evidence.

Likewise, accreditation and applications for accreditation is probative on the standard of care, which is central, as Billings Clinic admitted in its State Court briefing. Plaintiffs are entitled to know to which agencies or organizations Billings Clinic belongs. This request is neither overbroad nor unreasonable, and it is reasonably likely to lead to the discovery of relevant information.

Billings Clinic asserts that its refusal to produce these documents and information was "appropriate." [Docket No. 8-2 at 152]. Its belief that it behaved "appropriately" in holding back information is not the standard.

**IV.    Billings Clinic Refused to Answer Request for Admission No. 3.**

Billings Clinic attempts to excuse its refusal to admit Request for Admission

No. 3. Billings Clinic rewrote Request for Admission 3 and then denied it. It claims that it assumes that this Request was intended to meet an exception to the hearsay rule. [Docket No. 8-2 at 142]. Billings Clinic was not required to assume anything. It was simply asked to admit or deny the Request, as stated. Its excuse for denying the request, i.e., that it "did not make" the records, when it was not asked this question, is, like the above cited responses, simply obstructive bad faith. Fed.R.Civ.P. Rule 36 (a)(4) and (5) requires:

> **(4)** **Answer.** ….A denial must fairly respond to the substance of the matter; and when <u>good faith</u> requires that a party qualify an answer or deny only a part of the matter, the answer must specify the part admitted and qualify or deny the rest. …..
> **(5)** **Objections.** The grounds for objecting to a request must be stated. A party must not object solely on the ground that the request presents a genuine issue for trial.

Under Rule 36 (a)(6) F.R.Civ.P., the Court should deem this Request admitted.

## V. Billings Clinic Improperly Refused to Produce Healthcare Information, Misstating the Requests and Misusing MCA § 37-2-201 and 50-16-201 et. seq.

### Healthcare Information Belongs to Plaintiffs

Healthcare information belongs to both the patient and the hospital. *Huether v. District Court*, 2000 MT 158, 300 Mont. 212, 4 P.3d 1193 and §37-2-201 MCA. Patients and their estates have the right to their recorded health care information. §50-16-541, MCA. "Health care information" is any information relating to the patient's health care. §§50-16-502(4) -504(6), and 522, MCA. *Huether* stands for

allowing discovery of precisely the specific information requested:

> We conclude that the net effect of the peer review statutes is that "health care information" belongs both to the patient and to the hospital, while "data" is a matter of internal administrative function. Accordingly, we conclude that all "health care information" either reviewed or generated by medical staff committees should be made available to the subject patient. **Only the "data" are protected from disclosure**. Section 50–16–201, MCA, defines the "data," which "shall be confidential," as:
>
> > *written reports, notes, or records* of tissue committees or other medical staff committees *in connection with the professional training, supervision, or discipline of the medical staff of hospitals.*

(emphasis added). Plaintiffs specifically excluded "data" as defined above from their requests. Nevertheless, Billings Clinic refused to respond to numerous requests, claiming that Plaintiffs asked for "data." These objections and refusals to respond are frivolous, and obstructive bad faith. [Docket No. 8-2 at 143, 146, 147, 148].

### Billings Clinic Deliberately Misinterpreted Requests to Include 'Data'

Billings Clinic refused to respond to the following, citing Montana's peer review statutes:

> **RFP 8**-Documents relating to toxicology screen of Sarah's bodily fluid.
> **RFP 9**-Documents relating to Sarah, but not yet produced
> **RFP 10-**documents relating to the decision to remove the oxygen cannula.
> **RFP 12**-communications between Billings Clinic officers, employees, agents relating to Sarah.
> **RFP 13**-documents relating to the response to Sarah's respiratory arrest.

**RFP 15**-documents relating to the residents involved in Sarah's care.

**RFP 18**-training for physicians, residents, nursing staff, other person re standards for quality medical, including meeting minutes, applicable.

**RFP 20**-health care information used to make decisions about Sarah's treatment and care. Billings Clinic responded by referring to 7,000 pages of MMLP records.

**RFP 21**-records <u>not</u> related to "proceedings" of professional utilization, peer review, medical ethics review, and professional standards review committees relating to Sarah's care. It refers generally to the MMLP records.

**RFP 22**-records relating to care of Sarah.

**RFP 23**-staff minutes of any staff who have responsibility for responding to patients who "code" or arrest while at Billings Clinic.

**RFP 33**-documents relating to submission of urine to the Mayo Clinic <u>after</u> Sarah died.

**RFP 34**-documents relating to the decision not to perform an autopsy after Sarah died.

**RFP 36**- releases and any other documents in Billings Clinic or Mayo possession relating to toxicology testing Billings Clinic requested for Sarah.

**RFP 37**-documents generated by Mayo re their policies for testing urine for toxins.

**Int. 7**- name and current employer of each non-physician who had contact with Sarah.

These requests did not include only the medical chart. They sought communications, such as emails, correspondence, memos, and the like. Billings Clinic has no basis for claiming protection from peer review statutes as to these requests. Moreover, in Montana, corporations do not have a right of privacy. *Great Falls Tribune, supra.*

Billings Clinic attempted to excuse its obstruction by claiming that the requests by Plaintiffs were "broad enough to *implicate* 'data' as well as other documents." (emphasis added) [Docket No. 8-2 at 145-150]. This is not a legal

objection.

All "health care information," even if reviewed or generated by medical staff committees must be disclosed to the Plaintiffs. Only "data" are protected from disclosure. *Huether* ¶ 18 *, supra*.

Section 50-16-201(1)(a) MCA defines "data" as:

…written reports, notes, or records or oral reports or proceedings created by or at the request of a utilization review, peer review, medical ethics review, quality assurance, or quality improvement committee of a health care facility that may be shared with a medical practitioner, including the medical practitioner being reviewed, and that are used **exclusively** in connection with quality assessment or improvement activities, including the professional training, supervision, or discipline of a medical practitioner by a health care facility. The term includes all subsequent evaluations and analysis of an untoward event, including any opinions or conclusions of a reviewer. (emphasis added)

"Data" does **not include**:

(i)     incident reports or occurrence reports; or
(ii)    health care information that is **used in whole or in part to make decisions about an individual who is the subject** of the health care information.

Plaintiffs carefully asked only for documents including "incident reports, occurrence reports, health care information used in whole or in part to make decisions about Sarah." Billings Clinic shotgunned an objection cloaked in the peer review statutes and disingenuous reading in of "implications," ignoring *Huether* and §§37-2-201 and 50-16-201 MCA.

## VI.     Billings Clinic Ignored Plaintiffs' Second Discovery Requests.

On August 18, 2014, Plaintiffs sent their Second Discovery Requests to the Billings Clinic. *Tab I.* It simply ignored the requests. Counsel for Plaintiff attempted to confer on October 20, 2014, and Billings Clinic did not respond. *Tab H.*

## VII.    The Court should Issue Judgment on Liability and Award Plaintiffs all Fees and Costs incurred in bringing this Motion to Compel.

Billings Clinic refused to respond to discovery without any justification and stonewalled. See, Fed. R. Civ. P. 37(a)(2)(B). Under Rule 26(g)(1)(B) F.R.Civ.P. a signature on a response is certification that the response is:

(i)  consistent with [the Rules] and warranted by existing law or by a good faith argument for extending, modifying, or reversing existing law;

(ii) not interposed for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; and

(iii) neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action.

The Court "must impose the appropriate sanction" which may include attorney's fees and costs where the responses are without substantial justification. Rule 26 (g)(3) Fed. R. Civ. P.  See also, Rule 37 (a)(4) Fed. R.Civ.P.  "Where a party so damages the integrity of the discovery process that there can never be assurance of proceeding on the true facts, a case dispositive sanction may be appropriate." *Valley Eng'rs v. Electric Eng'g Co.,* 158 F.3d 1051, 1058 (9th Cir.

1998). Billings Clinic's pattern of conduct is obstructive, in bad faith, and not based on any reasonable interpretation of applicable law. Sanctions are appropriate.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue an Order:

1.      Of judgment for Plaintiffs on liability;

2.      Compelling Billings Clinic to immediately produce all documents responsive to Requests for Production and to fully answer all Interrogatories described above;

3.      Deeming all documents produced in accordance with this Order admissible at trial;

4.      Deeming Request for Admission No. 3 admitted;

5.      Awarding attorneys fees and costs pursuant to Fed. R.Civ. P. 26 (g) and 37(a)(4); and

6.      For such other and further relief as the Court deems just and proper.

///

RESPECTFULLY SUBMITTED this 23rd day of October, 2014.

**BEST LAW OFFICES, P.C.**

By:   /s/ Elizabeth A. Best
          Elizabeth A. Best, Esq.
          P.O. Box 2114
          Great Falls, MT 59403-2114
          Attorney for Plaintiffs

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies the foregoing document complies with LR 7.1(d)(2)(A). This brief, including footnotes, contains 6,218 words, excluding caption; table of contents and authorities; certificate of compliance; and Exhibit Index. The word count function of the word-processing system used to prepare this brief was relied upon in this calculation.

DATED this 23rd day of October, 2014.

**BEST LAW OFFICES, P.C.**

By:   /s/ Elizabeth A. Best
          Elizabeth A. Best, Esq.
          P.O. Box 2114
          Great Falls, MT 59403-2114
          Attorney for Plaintiffs

# EXHIBIT INDEX

**Exhibit**                                                                    **Page**

A)      Billings Clinic Responses to First Discovery Requests ..................................4

B)      Billings Clinic Amended and Supplemental Responses ................................4

C)      two charts summarizing the discovery responses ..........................................4

D)      March 15, 2014, letter to Speare Law Firm ...................................................9

E)      emails between Best Law Offices and Speare Law Firm .............................9

F)      Billings Clinic First Discovery Requests to Plaintiffs ...................................9

G)      Billings Clinic Second Supplemental Responses...........................................9

H)      October 20, 2014, email to Speare Law Firm ................................................9

I)      Second Discovery Requests to Billings Clinic................................................9

J)      email from Best Law Offices to Speare Law Firm .......................................12

K)      Billings Clinic Third Supplemental Responses............................................12

L)      emails between Best Law Offices and Speare Law Firm .............................12