Elizabeth A. Best, Esq.
BEST LAW OFFICES, P.C.
425 Third Avenue North
P.O. Box 2114
Great Falls, MT  59403-2114
Telephone:(406) 452-2933
Facsimile:  (406) 205-7970
bestlawoffices@gmail.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## BILLINGS DIVISION

| | |
|---|---|
| DALE OSBORNE, as Personal Representative of the Estate of Sarah Osborne, | **Cause No. CV-14-126-BLG-SPW** <br> **Hon. Susan P. Watters** |
| Plaintiff, | |
| vs. | |
| BILLINGS CLINIC, and UNITED STATES OF AMERICA, | **AMENDED COMPLAINT AND JURY TRIAL DEMAND** |
| Defendants. | |
| BILLINGS CLINIC, | |
| Cross-Claimant, | |
| vs. | |
| UNITED STATES OF AMERICA, | |
| Cross-Defendant. | |

COMES NOW the Plaintiff, and demands a jury trial and alleges as follows:

## PARTIES

1. Sarah Osborne, deceased, was a resident of Yellowstone County, Montana, on all dates relevant to this Complaint.

2. Plaintiff, Dale Osborne, Sarah Osborne's father, is the duly appointed and acting personal representative for the Estate of Sarah Osborne, deceased. Plaintiff brings this action on behalf of the estate and on behalf of the heir or heirs as defined by Montana wrongful death law. Dale Osborne is and was at all relevant times a resident of Lewis and Clark County, Montana.

3. Defendant Billings Clinic is a hospital in Billings, Montana. It employed doctors, nurses, and other health care providers, who committed acts and omissions described in this Complaint. Defendant Billings Clinic also authorized employees of the United States (through Riverstone Health) to act as its agents. These agents also committed acts and omissions described in this Complaint, which caused the injuries described, including Sarah Osborne's death.

4. Defendant United States of America is the employer of individual doctors and residents at Riverstone Health (Riverstone), a federally qualified community health center. The individual doctors, residents, and Riverstone committed acts and omissions described in this complaint as employees of

Riverstone and as agents of the Billings Clinic. Throughout this Complaint, the USA is sometimes referred to as "Riverstone."

5. At all times relevant, the Riverstone employees have been deemed employees of the United States of America (USA). These employees at all times acted within the course of their offices or employment under circumstances where the USA, if a private citizen, would be liable to Plaintiff under the laws of the State of Montana. 28 U.S.C. § 1346 (b).

6. Plaintiff complied with the requirements of 28 U.S.C. § 2675(a) by first submitting an administrative claim against the USA pursuant to the Federal Tort Claims Act.

## JURISDICTION AND VENUE

7. The Court has subject matter jurisdiction over Plaintiff's FTCA claims under 28 U.S.C. § 1331 and § 1346(b).

8. The Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C.§1367.

9. The Court has personal jurisdiction over the USA and the Billings Clinic.

10. Venue is proper in the Billings Division of the Montana U.S. District Court because the negligent acts occurred in Billings, Montana. 28 U.S.C. §1402(b).

///

## FACTS RELEVANT TO ALL COUNTS

11.  Plaintiff realleges and incorporates by this reference paragraphs 1-10 above.

12.  On July 1, 2012, Sarah Osborne ("Sarah") presented to the Billings Clinic Emergency Department with symptoms of a urinary tract infection, right-sided abdominal pain, right-sided back pain, pyuria, nausea, and vomiting.

13.  The Billings Clinic Emergency Department admitted Sarah with a urinary tract infection at 1:33 p.m. on July 1, 2012.

14.  The Billings Clinic and/or Riverstone doctors and residents administered a test when it admitted Sarah, which showed that she also had a painful, toxic bacteria in her gastrointestinal tract, known as clostridium dificile, or "c. dif."

15.  Sarah was 27 years old, and was well known as a patient of Billings Clinic doctors, nurses, and other health care providers because of her diagnosis of diabetes.

16.  Despite the fact that the Billings Clinic and its doctors, nurses and other providers knew her well, instead of assigning Sarah to those doctors, the Billings Clinic assigned her care to the Billings Clinic Family Residency Program, and first year medical residents at Riverstone Health.

17.  Riverstone Health acted for and with the authority of the Billings Clinic. Riverstone Health doctors and residents were and are agents of the Billings

Clinic.

18. Billings Clinic knew that Sarah had been an insulin dependent diabetic since she was fifteen. Billings Clinic doctors had treated Sarah for various related health problems, and had performed surgery on her multiple times.

19. Sarah's records with the Billings Clinic included a documented history of sensitivity, reactions, tolerance, and allergies to specific prescription medications, including, but not limited to, Dilaudid, Reglan, and Benadryl.

20. The Billings Clinic and Riverstone knew that Sarah had a history of respiratory arrest when she took prescribed pain medications, including those described in paragraph 10 above. Sarah had arrested at least twice in the Billings Clinic before July 1, 2012. The Billings Clinic and its doctors also knew, and had records and notice of a respiratory arrest related to Dilaudid and Ultram, and possibly other drugs, in the Bozeman Deaconess Hospital prior to Sarah's admission on July 1, 2012.

21. After admitting Sarah, the Billings Clinic and Riverstone gave her numerous pain medications, but did not monitor her.

22. During the evening of July 1, 2012 and into the morning of July 2, 2012, Sarah vomited continuously and was in great pain. The Billings Clinic and Riverstone administered pain medications, including morphine, Fentanyl, and Dilaudid, throughout the night.

23. Throughout the night, Sarah's oxygen saturation levels decreased. The Billings Clinic and Riverstone gave her extra oxygen through a cannula at 3:08 a.m.

24. As of 8:00 a.m. on July 2, 2012, although Sarah's pain levels had decreased as the result of the pain medications given throughout the night, she still had right upper quadrant pain in her abdomen.

25. At 8:00 a.m. on July 2, 2012, the Billings Clinic and/or Riverstone removed the oxygen cannula, which was giving Sarah extra oxygen, and left her on room air.

26. The last electronic record of that anyone from the Billings Clinic or Riverstone checked on Sarah Osborne was at 8:45 a.m.  She told a Billings Clinic nurse that she was tired.  The nurse helped her into bed, turned off the light and shut the door.

27. At 9:20 a.m. on July 2, 2012, a volunteer at the Billings Clinic noticed that Sarah was not breathing.  She was in respiratory and cardiac arrest.

28. After five minutes, Billings Clinic and/or Riverstone personnel began chest compressions.

29. Sarah suffered severe hypoxic brain injury.  She never regained consciousness.

30. Over the next nine days, the Billings Clinic and/or Riverstone kept her on

life support. On the ninth day, on the advice of the Billings Clinic and/or Riverstone, her family withdrew life support, and she died.

## Count I
## Billings Clinic-Negligence-Wrongful Death-MCA 27-1-513

31. Plaintiff realleges and incorporates by this reference paragraphs 1-30 above.

32. The Billings Clinic and Riverstone failed to meet, and violated, the standards of care used by qualified health care professionals in like circumstances as follows:

   (a) Negligently failed to assess, monitor, and manage Sarah's condition during her hospitalization while she was a patient at the Billings Clinic;

   (b) Negligently administered drugs that the Billings Clinic and Riverstone doctors and residents knew were likely to cause Sarah to suffer respiratory arrest;

   (c) Negligently failed to monitor Sarah Osborne's condition while on narcotic pain medications when the Billings Clinic and Riverstone doctors and residents knew that she had a prior history of multiple narcotic related respiratory arrests;

   (d) Negligently failed to employ and use reasonable care and diligence and the necessary medical skills demanded for the care and treatment of Sarah;

(e) Negligently failed to use the care and skill ordinarily exercised in like cases by qualified health care practitioners;

(f) Negligently failed to monitor Sarah Osborne closely enough, given her known history, to prevent respiratory arrest;

(g) Negligently failed to provide an adequate and timely response to the respiratory arrest;

(h) Negligently failed to provide an adequate and timely response to the cardiac arrest; and

(i) Negligently failed to properly supervise the treatment and care rendered to Sarah Osborne.

33. The conduct of the Billings Clinic and Riverstone constitutes violations of the applicable standards of care and was a proximate cause of the injuries complained of, caused Sarah's death.

34. At all material times before Sarah's death, Sarah was in the physical care of the Billings Clinic and Riverstone. The Billings Clinic and Riverstone had the authority, duty and ability to protect Sarah from harm.

35. The acts and omissions of the Billings Clinic and Riverstone were a legal cause of death of Sarah Osborne.

36. As a result of the negligence and harm caused by the Billings Clinic and Riverstone Sarah Osborne's heir or heirs have suffered legal harm.

37. The Court should assess damages against the Billings Clinic and the USA, in the full amount provided by Montana law for such injury and harm.

38. Defendant Billings Clinic acted with actual malice as defined by MCA 27-1-221. The Billings Clinic should be assessed punitive damages in a reasonable amount, sufficient to punish and educate Defendant, and other persons or entities similarly situated, that such conduct will not be allowed by the courts or citizens of Montana.

## COUNT II
### Survivorship Action, MCA 27-1-501
### Negligence

39. Plaintiff realleges and incorporates herein paragraphs 1-38 above by this reference.

40. Defendants were negligent, as set forth above. Said negligence was a legal cause of serious physical, mental and emotional harm to Sarah Osborne, prior to her death, and a legal cause of Sarah's ultimate death.

41. After Sarah suffered such injury and harm, she lived for an appreciable period, sufficient to suffer physical pain and mental anguish and serious emotional distress.

42. As a result of such harm and injuries, Sarah Osborne suffered compensatory damages.

43. Sarah Osborne's estate is entitled to judgment for all such compensatory

damages allowed by Montana law.

44. Defendant Billings Clinic acted with actual malice as defined by MCA §27-1-221.  Defendant Billings Clinic should be assessed punitive damages in a reasonable amount, sufficient to punish and educate it, and other persons or entities similarly situated, that such conduct will not be allowed by the courts and citizens of Montana.

### COUNT III
### USA- Wrongful Death-FTCA; MCA 27-1-513
### Negligence

45. Plaintiff realleges paragraphs 1-44 above and incorporates them by this reference.

46. The conduct of the Billings Clinic and the USA, through Riverstone, constitutes violations of the applicable standards of care and was a proximate cause of Sarah's death.

47. At all material times before Sarah's death, Sarah was in the physical care of the Billings Clinic and the USA, through Riverstone.  The Billings Clinic and the USA, through Riverstone, had the authority, duty and ability to protect Sarah from harm.

48. The acts and omissions of the Billings Clinic and the USA, through Riverstone, were a legal cause of death of Sarah Osborne.

49. As a result of the negligence and harm caused by the Billings Clinic and

Riverstone Sarah Osborne's heir or heirs have suffered legal harm.

50. The Court and jury should assess damages against the Billings Clinic and the USA, in the full amount provided by Montana law for such injury and harm.

## COUNT IV
## USA-Survivorship Action, FTCA-MCA 27-1-501
## Negligence

51. Plaintiff realleges and incorporates herein paragraphs 1-50 above.

52. Defendants were negligent, as set forth above. Said negligence was a legal cause of serious physical, mental and emotional harm to Sarah Osborne, prior to her death, and a legal cause of Sarah's ultimate death.

53. After Sarah suffered such injury and harm, she lived for an appreciable period, sufficient to suffer physical pain and mental anguish and serious emotional distress.

54. As a result of such harm and injuries, Sarah Osborne suffered compensatory damages.

55. Sarah Osborne's estate is entitled to judgment for all such compensatory damages allowed by Montana law.

**WHEREFORE,** Plaintiff prays for judgment against Billings Clinic and the United States of America:

    1. For all compensatory damages allowed by law;

    2. For punitive damages in an appropriate amount against Billings

    Clinic; and

3. For such other and further relief as the Court and jury deem appropriate.

Dated this 10th day of October, 2014.

**BEST LAW OFFICES, P.C.**

By: /s/ Elizabeth A. Best
Elizabeth A. Best, Esq.
P.O. Box 2114
Great Falls, MT 59403-2114
Attorney for Plaintiff

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury.

Dated this 10th day of October, 2014.

**BEST LAW OFFICES, P.C.**

By: /s/ Elizabeth A. Best
Elizabeth A. Best, Esq.
P.O. Box 2114
Great Falls, MT 59403-2114
Attorney for Plaintiff