IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION



FILED
MAR 26 2015
Clerk, U.S. District Court
District Of Montana
Billings

| | |
|---|---|
| DALE OSBORNE, as Personal Representative of the Estate of Sarah Osborne,<br><br>Plaintiff,<br><br>vs.<br><br>BILLINGS CLINIC, and UNITED STATES OF AMERICA,<br><br>Defendants.<br><br>---<br><br>BILLINGS CLINIC,<br><br>Cross-Claimant,<br><br>Vs.<br><br>UNITED STATES OF AMERICA,<br><br>Cross-Defendant. | CV 14-126-BLG-SPW<br><br>OPINION and ORDER |

Before this Court is Plaintiff Dale Osborne's second motion to compel discovery. (Doc. 46) He requests that the Court compel Billings Clinic's responses to a number of discovery requests, issue sanctions, and award attorneys'

1

fees and costs. Osborne's motion is granted in part and denied in part for the reasons set forth below.

I.  **Discussion**

Because the same arguments crop up with respect to Osborne's second and third discovery requests, this Court will address the issues, as opposed to the specific requests, in order.

A.  **Privilege Log**

Osborne argues that Billings Clinic asserted "privilege in its responses to his Requests for Production Nos. 51, and 63-67, but failed to provide a privilege log." (Doc. 47 at 5). Billings Clinic argues that it did not assert privilege in response to any of Osborne's requests. (Doc. 47 at 6-7). The Court reviewed Billings Clinic's responses to Plaintiff's second and third discovery requests. Billings Clinic did not assert any privilege objections. Osborne's motion to compel on this issue is denied.

B.  **Requests seeking "policies, procedures and ... other guidance ... for the period January 1, 2010 to present."**

In Requests for Production Nos. 51, 64-67, Osborne seeks production of "policies, procedures, training materials or other guidance" regarding various medical topics from January 1, 2010 to the present. (Doc. 47-1 at 5; 47-2 at 9-13). In its responses, Billings Clinic asserted the requests were overbroad and vague,

sought irrelevant information, and objected to producing documentation, including its policies, without a stipulated protective order. (*Id.*)

### 1. Protective Order

On June 19, 2014, Billings Clinic sought, and the state court granted, a protective order with respect to its policies. Despite removal to federal court, that order remains in effect. (Doc. 78); 28 U.S.C. § 1450. Billings Clinic must produce its policies, and the parties must proceed, in compliance with that order.

### 2. Other responsive documentation

Irrespective of Billings Clinic's policies, Osborne argues that Billings Clinic refuses to produce other documents responsive to these specific discovery requests. (Doc. 47 at 14-15; Doc. 59 at 9). As a practical matter, Billings Clinic's discovery responses state otherwise. To each request seeking "policies, procedures and other guidance," Billings Clinic responded, "[P]ursuant to a Stipulated Protective Order or a Court issued Protective Order, Billings Clinic will produce responsive documents relevant to July, 2012, the time period at issue only ...." (Doc. 47-1 at 5; 47-2 at 9-13). In other words, Billings Clinic's response stated that it will produce responsive documents (not just policies) once a protective order is in place.

### 3. Objection regarding the discoverable time frame

Of course, the Court notes that Billings Clinic limited its promised production of responsive documents to July, 2012, because documents outside that time frame were not reasonably calculated to lead to the discovery of admissible evidence. (*Id.*) Osborne argues this objection is "not a legal objection." (Doc. 59 at 12). The Court disagrees.

Billings Clinic's objection arises from Federal Rule of Civil Procedure 26(b)(1) which provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense [and that need not] be admissible at trial *if the discovery appears to be reasonably calculated to lead to the discovery of admissible evidence.*" (Emphasis added). *See also* Advisory Committee Note to the 2000 Amendment to Rule 26(b)(1) (stating that the Rule was amended "to clarify that information must be relevant to be discoverable, even though inadmissible, and that discovery of such material is permitted if reasonably calculated to lead to the discovery of admissible evidence.")

Because Osborne's case is predicated on his ability to prove that Billings Clinic and/or RiverStone doctors breached the standard of care in July, 2012, policies and procedures from 2010, 2011, any month other than July in 2012, 2013, 2014, or 2015, have no relevance to the subject matter in this action. No one has

argued otherwise. Billings Clinic's objection to producing information that was not in effect or pertinent to the time frame at issue is sustained.

### 4. Objection regarding the term "guidance."

As noted above, in addition to requesting "policies, procedures, and training materials," related to various medical topics, Osborne also seeks production of "other guidance," in his Requests for Production Nos.63-67. (Doc. 47-2 at 9-13). Billings Clinic argues that the term "other guidance" is vague because Billings Clinic could have guidance regarding any of the topics in many of its departments. In response, Osborne fails to provide any additional details about what "guidance" he seeks or what "guidance" even is. Billings Clinic's argument is persuasive. For example, the Clinic could have "guidance" regarding the administration of opioids (Osborne's Request for Production No. 64) in every department in the hospital. Guidance on administering opioids to infants, however, has no relevance to this case, nor is it calculated to lead to the discovery of admissible evidence. Billings Clinic's objection with respect to Osborne's request for "guidance" in Request for Production Nos. 63-67 is sustained.

### C. Objections followed by response that Billing Clinic does not have documents.

Osborne argues that Billings Clinic objected and responded to his Requests for Production Nos. 55 and 56 that it had no responsive documents. Indeed, he is correct. Billings Clinic did, in fact, respond to his requests and state that it has no

5

responsive documents. (Doc. 47 at 10). But that response is not objectionable. Sometimes no documents exist to produce. And based on Billings Clinic's response, which it submitted under F.R.Civ.P. 11 and 37, there are no additional answers to compel. Osborne's motion to compel with respect to this issue is denied.

### D. Logbooks and video surveillance

Osborne moves to compel Billings Clinic's responses to Requests for Production No. 62 (requesting logbooks for the floor on which Sarah Osborne was admitted) and 69 (requesting surveillance videos on the floors where Sarah Osborne arrested). (Doc. 47 at 13, 15). Billings Clinic responded in discovery and that no logbooks or surveillance videos exist for the floors in question. (Doc. 55 at 5-7; Doc. 47-2 at 14-15). Billings Clinic **again** told Osborne no logbooks or surveillance videos exist for the floors in question in correspondence preceding this motion on December 15, 2014. (Doc. 47-6 at 6, 9). Osborne's motion to compel with respect to this issue is denied.

### E. Audit trails

Osborne seeks to compel production of Billings Clinic's audit trails for Sarah Osborne's medical chart for July 2012. Osborne argues that under Montana law, the audit trails are included in Sarah Osborne's "healthcare information" and so are discoverable. Billings Clinic argues that audit trails were implemented for

6

quality control purposes and as a result are not "healthcare information" under Montana law or included in the "designated record set" to which patients are entitled to under the Health Insurance Portability and Accountability Act (HIPAA), 45 C.F.R. § 160, et seq. (Doc. 55). This Court determines the audit trails are discoverable for the reasons set forth below.

Osborne argues that the Montana Supreme Court has broadly determined that where a patient can show that records relate to his or her hospital care and treatment, the records are discoverable. (Doc. 47 at 12 (citing *Huether v. Dist. Court of Sixteenth Judicial Dist. of State of Montana, In & For the Cnty. of Custer*, 2000 MT 158, ¶ 18, 4 P.3d 1193, 1197)). In *Huether*, the personal representative of a deceased hospital patient sought documents indicating whether the decedent's vital signs had been monitored prior to his death. There, like here, the hospital resisted disclosure by pointing to Montana's peer review statutes which provide for confidentiality of information and proceedings of medical peer review committees. *Id.* at ¶¶ 4–5. The thrust of the hospital's argument turned on the premise that the Montana statute allows a healthcare provider to deny a patient access to health care information if the health care provider reasonably concludes that the health care information is "data," used exclusively in connection with quality assessment or improvement activities by a health care provider, as defined in § 50-16-201(1)(a). *Id.* at ¶ 16 (citing § 50-16-542(1)(d), MCA).

Finding the documents discoverable, the Court explained that the medical peer review confidentiality statutes must be reconciled with other segments of Montana law, particularly the Uniform Health Care Information Act, which establishes a patient's right to inspect information relating to the patient's health care. *Id.* at ¶¶ 12–19. In order to give effect to all of Montana's relevant healthcare statutes, the Court held that "to the extent that the records sought by the Estate [] relate to Huether's hospital care and treatment, they do not fall within the definition of 'data,' [so they] are subject to discovery by the patient or [] the patient's estate." *Id.* at ¶ 19. Based on the holding in *Huether*, the relevant inquiry here is whether the audit trails, notwithstanding the fact that they may be "data," relate to Osborne's hospital care and treatment: if so, they are discoverable under Montana law. *Id.* at ¶¶ 18-19.

Billings Clinic argues that HIPAA does not provide for such an expansive view of what is discoverable. The Clinic argues that the audit trails do not relate to Sarah Osborne's care and treatment because audit trails were generally implemented for quality control purposes to allow the hospital to monitor patient record access for compliance with HIPAA. (Doc. 55 at 8). According to the Clinic, audit trails are not used to make medical decisions, are not considered part of a patient's medical or billing record, and are not created on every patient. (Doc. 55 at 1-10). The Clinic thus concludes that under HIPAA, because the audit trails

8

exist for purely administrative reasons and do not fall within a patient's "designated record set," they do not constitute "healthcare information" to which a patient is entitled under HIPAA. (*Id.* at 9) (citing *Harris v. Tenet Healthsystem Spalding, Inc.*, 746 S.E.2d 618, 623 (Ga. App. 2013) (citing 45 C.F.R. § 164.524(a)(a) (sic) and 45 C.F.R. § 164.526(a)(1)).

What Billings Clinic fails to note, however, is that HIPAA preempts any "contrary" state law, unless the state law is "more stringent" than the HIPAA requirements. 45 C.F.R. § 160.203. A state law is "contrary" to HIPAA if a health care provider would find it impossible to comply with both the state and federal provisions regarding disclosure or if the state law is an obstacle to the accomplishment of the purposes of HIPAA. 45 C.F.R.§ 160.202. There is no pre-emption, however, when a "contrary" state law is "more stringent" than HIPAA. 45 C.F.R. § 160.203(b).

Under *Huether*, Montana law allows an individual complete access to all of his or her "healthcare information," but 45 C.F.R. § 164.524(a) limits an individual's access to his or her "designated record set." Therefore, Montana law is contrary to HIPAA because a health care provider would find it impossible to comply with Montana law, which does not restrict the release of an individual's healthcare information to that individual, and HIPAA, which does restrict the release of an individual's healthcare information to the individual in certain

9

circumstances. 45 C.F.R. § 160.202. Thus, HIPAA pre-empts Montana law on this issue, unless Montana law is more stringent. 45 C.F.R. § 160.203(b). Montana law is more stringent with regard to an individual's right to his or her medical records because Montana law permits a patient greater access to his or her records than HIPAA does. 45 C.F.R. § 160.202; *cf. Huether*, ¶¶18-19 and 45 C.F.R. §164.524. Consequently, HIPAA does not preempt Montana law and Osborne's discovery is not limited to Sarah Osborne's "designated record set." Under Montana law, Sarah Osborne's audit trails are discoverable.

## F. Request for Inspection

Osborne seeks permission to inspect Billings Clinic's emergency department, and the rooms and floors where Sarah Osborne was admitted from July 1-12, 2012. Osborne argues that photographs of these areas would assist in explaining how alleged events happened, the location of respective stations, and would assist in showing where the parties were at the time of the events at issue. (Doc. 59 at 10-11). Further, Osborne agreed to take no more than five minutes in Room 317, and to protect the identity of patients during his inspection. (*Id.* At 11-12).

Billings Clinic opposes any on-site inspection because it would be "disruptive of Billings Clinic operations and could compromise current patients' rights to confidentiality." (Doc. 55 at 16). Billings Clinic asserts that an

inspection would not be able to occur anytime there were patients in the ICU or the medical floor room so the burden of the proposed inspection outweighs its necessity. (Doc. 55 at 16).

The Federal Rules of Civil Procedure permit a party to request—"within the scope of Rule 26(b)"—"entry onto designated land or other property controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed.R.Civ.P. 34(a)(2). Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). When considering a motion under Rule 34(a)(2) "the degree to which the proposed inspection will aid in the search for truth must be balanced against the burdens and dangers created by the inspection." *Belcher v. Bassett Furniture Indus., Inc.*, 588 F.2d 904, 908 (4th Cir. 1978).

Osborne alleges that Billings Clinic failed to monitor and manage Sarah's condition during her hospitalization at Billings Clinic. (Doc. 43 at ¶ 32). Photographs can make the presentation of evidence on locations, physical distances, and presence of hospital staff much clearer and more concise than verbal testimony alone. Under Rule 34, Osborne should be allowed to obtain demonstrative evidence of how Sarah Osborne's treatment occurred by virtue of the hospital's configuration. Of course, Osborne does not have the right to roam

11

through Billings Clinic facilities at will, particularly in light of Billings Clinic's concerns regarding patient privacy and disruption. Osborne's suggestions regarding both convince this Court that the burden to Billings Clinic does not have to outweigh the search for the truth, however.

Osborne therefore, is permitted to conduct a "brief walk through" of Billings Clinic's emergency department, to last no more than five minutes, nurses' stations and hallways, to last no more than ten minutes, and Room 317 at a time it is unoccupied, to last no more than five minutes, for a time frame of inspection and photographing totaling no more than 20 minutes, . This time frame does not include the time it takes to walk from one designated area to another. During the viewing and inspections, Osborne and/or his representative may not ask questions of any Billings Clinic patients and staff and should direct all of their potential questions to Billings Clinic's attorney present during the inspection. This inspection will be set at a time frame mutually agreeable to both parties.

### G. Safety Video

Osborne seeks to compel the production of a safety video referenced on Billings Clinic's website. (Doc. 47 at 17). Billings Clinic has refused to produce the video because Expectation Management and Medical Information (EMMI) produced and owns the video, not Billings Clinic. (Doc. 55 at 16-17). As a result,

12

Billings Clinic argues that it does not have custody or control of the videos such that it is required to produce them. (*Id.*)

Under Rule 34(a), a party may request the production of documents that are "in the responding party's possession, custody, or control." Fed.R.Civ.P. 34(a)(1). "[F]ederal courts have consistently held that documents are deemed to be within the 'possession, custody or control' for purposes of Rule 34 if the party has actual possession, custody or control, or has the legal right to obtain the documents on demand." *United States v. Int'l Union of Petroleum and Indus. Workers, AFL-CIO*, 870 F.2d 1450, 1452 (9th Cir. 1989). "A party responding to a Rule 34 production request cannot furnish only that information within his immediate knowledge or possession; he is under an affirmative duty to seek that information reasonably available to him from his employees, agents, or others subject to his control." *Rogers v. Giurbino*, 288 F.R.D. 469, 485 (internal citations omitted).

But "'[t]he relationship between the party and the person or entity having actual possession of the document is central in each case. The party must be able to command release of the documents by the person or entity in actual possession.'" *United States v. Estate of Young v. Holmes*, 134 F.R.D. 291, 294 (D.Nev.1991)). Ordering a party to produce documents that it does not have the legal right to obtain will oftentimes be futile, because the party has no way of getting those documents. *In re Citric Acid Litigation*, 191 F.3d 1090, 1108 (9th Cir. 1999). Of

13

course, "[t]he party seeking production of documents bears the burden of proving that the opposing party has [such] control." *International Union*, 870 F.2d at 1452.

Here, it is undisputed that Billings Clinic does not have possession of the safety video, but has a link to the video posted on its website. Billings Clinic stated that while Osborne could access the video via the website, Billings Clinic has no way to produce the video. (Doc. 55 at 17). In his reply, Osborne does not refute Billings Clinic's assertion that it does not have legal control over the video nor the means to compel EMMI to produce the video. Because Billings Clinic does not have legal control over EMMI's video, this Court cannot compel Billings Clinic to produce the video. *International Union*, 870 F.2d at 1452. Osborne's motion to compel with respect to this issue is denied.

### H. Documents in form maintained

In his Request for Production No. 58, Osborne requested Billings Clinic produce the electronic copy of Sarah Osborne's medical record and provided a flash drive. (Doc. 47-2 at 7). Osborne failed to specify any particular form for the records. (*Id.*) In response, Billings Clinic provided the medical records in PDF form on the flash drive. (*Id.*) On December 4, 2014, Osborne requested the records "in the form [they are] maintained, electronically." (Doc. 47-5 at 3). Billings Clinic refused Osborne's request on December 15, 2014, citing Federal Rule 34(b)(E), which does not require the responding party to produce the

electronically stored information in more than one form. (Doc. 47-6 at 5).

Osborne moves to compel Sarah Osborne's medical records in the format they are maintained because the PDF records he received from Billings Clinic contain duplicates and are difficult to follow in the PDF format. (Doc. 47 at 10, Doc. 59 at 12).

Fed.R.Civ.P. 34(b)(2)(E) controls the production of electronically stored information:

> (E) Producing the Documents or Electronically Stored Information. Unless otherwise stipulated or ordered by the court, these procedures apply to producing documents or electronically stored information:
>
> (i) A party must produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request;
>
> (ii) If a request does not specify a form for producing electronically stored information, a party must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms; and
>
> (iii) A party need not produce the same electronically stored information in more than one form.

Because Osborne did not specify a form for the production of the documents at issue, Billings Clinic had the option of producing the records in the form in which they were ordinarily maintained, or in a reasonably usable form. *Id.* By producing the records in PDF format, Billings Clinic did not produce the records in the form

15

they were ordinarily maintained, so in order to comply with the rule, as produced, the records must have been in reasonably usable form. *Id.*

According to Osborne, the records in PDF form are not reasonably usable. Osborne points out that the PDF form contains multiple duplicates and is extremely difficult to understand. He reasonably seeks to view the records in the same manner Billings Clinic views them. Billings Clinic has not asserted that the records cannot be produced in the form they are originally kept, so there is no apparent reason Osborne should be placed at a disadvantage by having to slog through thousands of pages of records in unusable form. Accordingly, Osborne is entitled to the records in the form they are ordinarily maintained. His motion to compel with respect to this issue is granted.

### I. Billing codes

Osborne moves to compel Billings Clinic's response to his Request for Production No. 61, where he seeks "billing codes similar to those recorded for Sarah Osborne from July 1-12, 2012, for the period 2010 to the present." (Doc. 47-2 at 8). Osborne contends that "this information is reasonably calculated to lead to the discovery of admissible evidence, including the competency of the doctors involved in Sarah's care," (doc. 47 at 13), and "information about the experience of RiverStone doctors in managing similarly situated patients." (Doc. 59 at 9). This Court disagrees. As noted above, Osborne's negligence claim

16

survives in the event he can prove that Billings Clinic and/or RiverStone doctors breached the applicable standard of care thereby causing Sarah Osborne's death. Accordingly, information regarding Billings Clinic's or RiverStone's doctors' competence and experience is not relevant and is not reasonably calculated to lead to the discovery of admissible evidence in this case. Osborne's motion with respect to this issue is denied.

### J. Attorney's fees and sanctions

Osborne seeks attorney's fees and sanctions for the instant motion to compel. Osborne asserts that Billings Clinic's responses are "obstructive, in bad faith, and not based on any reasonable interpretation of applicable law." (Doc. 47 at 18). Considering that Osborne moved to compel responses to discovery requests that he already had, failed to acknowledge Billings Clinic's repeated assertions that it did not possess responsive documents to other responses, and requested a privilege log when Billings Clinic did not assert any privileges, sanctions and attorneys' fees against Billings Clinic are certainly not appropriate. Osborne's request for sanctions and attorneys' fees is denied.

## III. Conclusion

For the foregoing reasons, Osborne's Second Motion to Compel (Doc. 46) is GRANTED in part and DENIED in part.

It is so ORDERED.

17

DATED this 25th day of March 2015.

                                                */s/ Susan P. Watters*
                                                SUSAN P. WATTERS
                                                United States District Judge